Good morning, and may it please the Court. My name is Rory Bellantoni for Plaintiff Appellant. This appeal presents a narrow but important question. Whether a parent who prevailed on both Prongs 1 and 2 of Burlington-Carter test below may nonetheless receive zero reimbursement based solely on an unraised, unlitigated, ten-day notice theory and speculative equities. At the administrative hearing, the DOE expressly conceded it did not provide the student with a FAPE. The IHO found the DOE denied FAPE and that the parent's unilateral placement at the private school was appropriate. At that point, the law presumes reimbursement subject only to a properly developed equities record. Prevail on Prong 1, prevail on Prong 2, there's a presumption, albeit a rebuttable presumption, that the parent isn't entitled to reimbursement. Well, as I understand it, the IHO found that there had not been compliance with a mandatory notice provision of ten days prior, and the district court found that the SRO was reasonable in crediting and affirming that, in view of the fact that there were strong indications that even though the parent claimed otherwise, it had not been sent, it wasn't in the defendant's file, the original claims made by the parents didn't claim to have complied with that ten-day notice, although they did claim to have provided the ten-day notice with respect to the full year, and there were suspicious circumstances about counsel having fraudulently submitted a similar notice in another case previously, the same counsel, so it was reasonable of the SRO to affirm what the IHO had done, and the district court, it was reasonable for the district court to go along with that as well. Why isn't that the answer? Because there was no evidence below. Your Honor mentioned that the ten-day notice wasn't in the DOE file. The district did not address the ten-day notice at all. After the close of evidence, the IHO found that there was no ten-day notice in the record, but there was never a finding that the ten-day notice was not served. The DOE didn't address this in opening, didn't address this with any witnesses, didn't address it at all. They didn't come to the hearing and say, we never received notice, which would rebut that presumption that the parent is entitled to reimbursement. The SRO reversed on the 22-23 school year, but just summarily held, because there was the ten-day notice wasn't in the record, I'm going to affirm a complete denial of reimbursement for the parent. That would be the consequence, wouldn't it? If there was no ten-day notice, that would be the consequence, denial. Your Honor, there's a difference between no ten-day notice and who has to prove whether there was or wasn't a ten-day notice. So you're saying that we should remand to have further determination of whether that notice was sent or not? Yes, Your Honor. And not only whether it was sent, but if it wasn't sent, how was the DOE in any way prejudiced? The ten-day notice requirement... Failure to send notice doesn't require prejudice, does it? It should. And in cases, it does. The Circuit, Second Circuit, has not specifically said that. But how would we have an equitable balancing if we didn't weigh, in a proportional way, the harm caused to the DOE if parents' late notice prevented the DOE from placing the student in an open seat, then, equitably, the parent should have reduced or denied tuition altogether. If the DOE could have cured the fate somehow, and they testify to that or present evidence to that effect, then the notice is, yes, to give the DOE an opportunity to cure. But by not addressing this in front of the IHO, the DOE never said... It's a requirement, isn't it? It's not a... It is a requirement. And, as you say, the purpose of the requirement is to give the DOE an opportunity to cure, and that's why it's written into the statute. Are you saying it can't be... It was inappropriate for the SRO to consider it at all because there was no evidence... Because it wasn't discussed before the IHO, because your client didn't produce any evidence of giving the notice? Yes. There was no evidence. If I may, the statute allows tuition may be reduced or denied if 10 business days before, prior to the removal of the child from the public school, the parents did not give written notice. That would, to me, presume that the DOE would have to show the parents aren't going to prove they did not give written notice. There's not a condition precedent that the parent has to show they gave notice... Surely the parents are in the best position to show that they gave notice. A Department of Education, it's a big, sprawling bureaucracy. How are they going to look through all their papers and say, well, we don't see any notice here? I mean, it makes sense that the burden lies upon the plaintiff. You're supposed to give notice, show you gave notice. Well, again, the statute reads, did not give written notice, may be reduced or denied. The question is, who has to show that notice was given? If the district is looking for that reduction, which we, again, prevail on prong one, prevail on prong two, there's a presumptive entitlement to relief, the DOE has to rebut that presumption. When 10 days notice is given, is it the case that the school board then has 10 days in order to revamp its fate? They can revamp the fate, reconvene at any time. And again... Then what is the 10 day notice? What does it give them 10 days to do? And if I may, too, Your Honor... I just... It's a simple question. You have litigated many of these things. It's to put them on notice that the student is moving. But here's two issues. First of all, there was a... To put them on notice the student is moving, and that gives them 10 days to revamp the fate and come forward and say, you know, it may not have been adequate before, these are the changes we are making. Isn't that right? Isn't that what the 10 days are for? Under D.B., yes. Under A... If you chop off four of those days, then the board has only six days, which could include a weekend, of course. It doesn't give them any opportunity to adjust the offer being made to the parents to provide a free and adequate public education. Shouldn't there be some burden on the district to say they would have done that, rather than speculating that they would have cured, rather than speculating here that they didn't have the opportunity... They could have presented that in their case. At what point in the proceedings did the question of notice surface and become an issue discussed in the litigation? At the I.H.O. level, after the record was closed, the I.H.O. raised the issue that... I didn't see a 10-day notice... It was raised at the I.H.O. level. Not in the fact-finding hearing. No, but it was... It did come... But it then was brought to the surface, and the I.H.O. considered this. The I.H.O. considered it on his own. It was not part of the fact-finding proceeding. It came out... But the I.H.O. did consider it. In his FOFD, yes. What did the I.H.O. conclude? The I.H.O. concluded that, well, there were several reasons the SRO reversed the others, but that because... What did the I.H.O. conclude? Because the 10-day notice... What did the I.H.O. conclude? Because the 10-day notice was not served, then there should be a complete denial of... Right. ...tuition and transportation for the 2021-2022 school year. And then the SRO considered that. Is that right? The SRO considered that, and the parent also... The SRO considered the I.H.O.'s rejection based on the failure to give notice. The SRO considered that, but there was no evidence in the record... Yeah, yeah, yeah. I'm asking you what the SRO decided. The SRO considered it and decided that the I.H.O. had been reasonable enough. Is that correct? The SRO affirmed the I.H.O. in finding that because there was no 10-day notice, the parent should be denied all relief. Not a finding that the parent didn't provide a notice. As we know, it was late. The parents did try to put this in at the SRO level and in the district court. There was no finding on the record before the fact-finding hearing closed that the parents failed to provide notice consistent with the statute. Yes, the parents didn't show they provided it. But at the same time, there was no determination that it was not provided. Just the I.H.O.'s speculation afterwards without addressing this in the context of the hearing. Thank you. We'll hear from your adversary. Good morning, Your Honors. May it please the Court, I'm Diana Wallace on behalf of the New York City Department of Education and the school's chancellor. I will start where we were talking about the purpose of the notice. The purpose of the 10-day notice is to provide notice to the school district that the student is leaving the public school. And the purpose is to avoid allowing DOE the opportunity, allowing the school district the opportunity to talk to the parent, talk about the IEP, how they can keep the child in the public school so that they don't seek reimbursement. They don't seek public money because they don't believe that the public school is... If the notice had been given 20 days before the parents were going to take the child out, then there'd be 20 days for those negotiations. Sure, yes. And if it's given 10 days, then it's just 10 days for the negotiations. Right, and the statute, Congress determined that 10 days was the appropriate time period that you have to provide notice so that there's an opportunity for the district to negotiate before that you can go and make a claim for reimbursement for that time. In this case, even if one accepted the parent's contention, they still didn't give 10 days' notice, right? Even if one accepted the contention that the notice was not fraudulently concocted after the fact but was given as the parents contended, it still wasn't 10 days' notice. Right, they conceded, and I believe they conceded here, that it was 10 actual days, but the statute requires 10 business days. It was 6 business days. But it's what Congress, I mean, Congress decided that, you know, in view of the statute, it's a long one, 14-12-A-10-C-3-1, reimbursement may be reduced or denied if the parent fails to provide it. There's a finding that the parent failed to provide it, and even they conceded that they didn't provide it timely. And because we're on prong three, this Court made clear, actually after this decision was issued, of the district court's decision here in Ferria, that because we're at prong three, it's really up to the district court to make the assessment on reimbursement. And it's an abuse of discretion standard. So the Court here explained, you know, all the reasons why it was, as your Honor mentioned, the reasons why it came later, it wasn't mentioned in the due process complaint. And we will say that when my adversary said, oh, let's have a remand, my client, we've asked them multiple times, we've looked multiple times, it is the DOE, it's the largest school district in the country. We don't have a record of this. And also I'll point out that this student, right, if you look here, this was combined administrative proceedings for two academic years. They got full reimbursement for the second academic year that was litigated with this one. This is the last eight weeks of the 2021 to 2022 school year. How much was that full reimbursement? I don't know how much the full reimbursement was, your Honor. But these are, I don't know what was litigated here. How much was the part that they didn't get? In his brief, he says it's $66,000 for eight weeks. I don't know how much we actually paid out because of the way this got litigated. I don't know. But it's usually quite high. His brief says that it's $66,000 for eight weeks. This school, as your Honors may know, does have high tuition requests. But it was the last eight weeks of the school year, right? The IEP had been in place for the whole school year. At the same time, the CSE was being conducted. This is the May 2021 IEP at issue here. At the end of April 2022, they had the IEP meeting for the next school year, 2022-2023. Six days after that is when they moved the child. And there's eight weeks left in the school year of an IEP that had been implemented for the entire school year. And they moved the school. This is exactly what I think Congress and this Court has assessed in looking at these. You can't just pull the child out of school and expect reimbursement if there's not an opportunity to renegotiate. And then this... So the statute says that reimbursement may be denied if the notice is not given. So is there any judicial authority? Is there any precedent that says that there has to be a showing of prejudice? No. So this Court has never considered prejudice. None of the courts that I've seen have considered prejudice. He cites to one magistrate judge decision from the District of D.C. from 2007 that suggests prejudice. It's dicta anyway. But it's... And also I want to make clear a point to this Court. A panel of this Court a summary order in Lansman, which is like the exact same situation with the exact same law firm. There the panel made clear that it's... I know my adversary is talking about the burden that on reimbursement on prong three the parents bear the burden of showing that the equities weigh in their favor. Congress has determined that one of the things that's required is notice if they want the equities to be in their favor and that they didn't do act with unclean hands, which the Court in Feria said that the parents should not be acting with unclean hands and asking for reimbursement, that they need to provide this notice. So the Lansman Court, a panel of this Court, said that the District Court didn't clearly err by finding that Lansman failed to give timely written notice and that's a basis for reduction. And the Court said that the parent did not show that the school district's conduct would alter the equitable analysis to lead to a different result. In that case, the DOE did not even appear before the IHO. Here the DOE appeared. DOE contested the adequacy of the placement. We have some things in our brief about how this kind of went down and how things got sorted out through the SRO level that led to the situation. In the Lansman proceeding, was there a factual proceeding, a hearing with respect to prejudice? No. I don't think there was anything to do with prejudice. I believe that it was, there was no, it was the same exact procedural posture as this in the District Court. I'm not quite sure how the proceedings happened because I know the DOE didn't appear at the IHO. I don't know what happened before the SRO. But the District Court proceedings were identical to this one, basically summary judgment on prong three. So there was no factual finding other than the same factual finding by the District Court here, which is that the belatedly presented letter was not,     they did not credit it, and that it did not demonstrate that they met their burden. It's the same law firm, and it's the near-identical assertion that they made in both cases, that they had inadvertently withheld it when they filed their documentation, when they did it starting in the IHO. And I pointed out that they acted as if they had not removed the child when they filed their due process complaint. They said that there had not been an IEP when an IEP had been in place for most of the school year. So if, so in short, we just think, we think honestly this is the same case as Lansman, it really is the same party is almost the identical situation, and that this is an abusive discretion standard. And the statute does say that it's, that may, they may reduce or they may deny reimbursement. This was within the District Court's discretion on prong three. The District Court exercised this discretion. We don't see a reason why, that my adversary has said that this is an abusive     And for that reason we ask that this court affirm. Can I just ask, did the District Court give deference to the SRO on the balancing of the equity and the juridical opinion? The District Court did two things. They did it at first and the same thing happened in Lansman. It wasn't clear before Ferriera that there had to be deference on prong three. And Ferriera made clear that it was the District Court's initial, it's the District Court's decision alone. But the District Court did both, right? The District Court looked at it and said, I agree with the reasons that the SRO said. I looked at it, I agree that these are the reasons that the SRO thought that this document was belated, was not the document that was submitted to the DOE. And then the District Court looked at it. I mean, the District Court also looked at the equities. The District Court addressed counsel's argument that it was,  DOE should be, have shown something and the District Court said no. And also that it was up to the DOE to, it was the DOE acted in bad faith because the DOE didn't, because the DOE did not contest prong one before the District Court rejected that argument. And really, when we're talking about balancing the equities, here's really only one thing here, which is they're saying that it gets canceled out, that they're entitled to rein, they're, well, the 10-day letter is basically the only thing that's on either side of the ledger here. There's nothing, there's nothing else to balance out. And to the extent that they say that the DOE's conduct before the IHO not deciding to put on a case on prong one, the District Court rejected that as a reason to outweigh the lack of the 10-day notice. So we ask that this Court affirm. Thank you. We'll hear from Douglas. I'm not sure why a denial of faith wouldn't be something that balances that out. Right? How can we have a prong three balancing test if my client's on both sides of the ledger? What is it the DOE did or didn't do? And again, we're talking about a waiver issue. It's a 10-day notice. It's an affirmative, equitable defense. And the DOE never raised it at the hearing. They never raised this issue affirmatively so it could be litigated in any way. The parent here did not provide notice. The parent wanted to provide the notice, albeit it was a late notice, but didn't provide it at the hearing and the SRO wouldn't let that in. I'd also just point out that in this The parents have the opportunity to say all this at the SRO, right? Correct. Correct. If I may just point out double A, the cost of reimbursement described in the clause may be reduced or denied if at the most recent IEP meeting the parents attended prior to removal, the parents informed the IEP team that they were rejecting the IEP. Now, there was a an April 26th IEP meeting. It was for the 22-23 school year, but the parents had sent this notice on April 22nd. The parents did it, it was in our briefing to the court below, informed the DOE at the meeting on the 26th that they would be removing the child from the district and notice there was no 10 days notice in double A. Does that mean that the DOE doesn't have time to cure, to provide a fate? Double A just says at the most recent IEP meeting. Back on the 26th, the parent pulled the student out, I believe the student started on May 2nd, although that's not clear, but there's no 10 day notice requirement in part A. There's just notice at the IEP meeting. Again, arguably it was for a different year, but it was the next day that the parents signed the enrollment contract and did inform the DOE at that meeting. Below, the district court spoke a lot about the 10 day notice, but I believe his analysis on the equities promptery was a one page analysis and he deferred to the SRO, which a month later this court held in Ferrara that this court should not defer on the equities analysis. It should do its own de novo review of the equities like Judge   Torres had done it in Ferrara. It's not clear that district court judge did this here, which a remand would cure or clarify. Thank you, Mr. Bellingham. Thank you, Judge. We will take the matter under advisement.